GREGORY THOMAS, )
    Plaintiff, )
     )
v. )      1:14-cv-00476-JMS-DKL
     )
INDIANA OXYGEN COMPANY, INC., )
    Defendant. )

## ORDER

Presently before the Court in this alleged employment discrimination action is Defendant Indiana Oxygen Company, Inc.'s ("Indiana Oxygen") Motion to Dismiss Plaintiff's Complaint and/or Cap Plaintiff's Damages Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [Filing No. 9.] For the following reasons, the Court **DENIES** Indiana Oxygen's motion.

## I.
### STANDARD OF REVIEW

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is to test the sufficiency of the complaint, not to decide the merits of the case. Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject-matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal courts. *In re Chicago, R.I. & P.R. Co.,* 794 F.2d 1182, 1188 (7th Cir. 1986). Whether or not a plaintiff has standing to bring a lawsuit is a jurisdictional requirement which may be challenged through a motion made pursuant to Rule 12(b)(1). *Hoffman v. Gard,* 2010 WL 4226177, *1 (S.D. Ind. 2010).

The Court must accept as true the factual allegations of the complaint, viewing them in the light most favorable to the plaintiff, and making all reasonable inferences in the plaintiff's favor. *Sanner v. Board of Trade,* 62 F.3d 918, 925 (7th Cir. 1995). However, when faced with a

challenge to its subject-matter jurisdiction, the Court may look beyond the complaint and review any other evidence to resolve the jurisdictional issue. _Halker v. United States,_ 2010 WL 2838468, *2 (S.D. Ind. 2010). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for his or her claims. _Lee v. City of Chicago,_ 330 F.3d 456, 468 (7th Cir. 2003).

## II.
### BACKGROUND

The following facts are stated consistent with the foregoing standard, that is, in the light most favorable to Plaintiff Gregory Thomas. On July 13, 2012, Mr. Thomas filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Indiana ("Petition").[1] [Filing No. 10-1; _see also In re Thomas_, No. 12-08357-FJO-13 (Bankr. S.D. Ind.).] Item 21 on his "Schedule B—Personal Property" filed with the Petition asked him to report "[o]ther contingent and unliquidated claims of every nature . . . ." [Filing No. 10-2 at 3.] Mr. Thomas listed "Work Injury." [Filing No. 10-2 at 3.] This work injury referred to a hand and wrist injury allegedly incurred while working at Indiana Oxygen and underlying his worker's compensation claim for which he filed a Debtor's Application to Employ Special Counsel on October 24, 2012. [Filing No. 10-4 at 1.] The Bankruptcy Court subsequently granted his Debtor's Application to Employ Special Counsel, [Filing No. 10-5], confirmed his Chapter 13 plan on January 23, 2013, [Filing No. 10-3 at 4], and granted his request to modify his Chapter 13 plan a few months later, [Filing No. 10-3 at 5].

In May 2013, Mr. Thomas was terminated from his employment at Indiana Oxygen. [Filing No. 10-11.] He filed a charge of discrimination with the Equal Employment Opportunity

---

[1] The Court may consider Mr. Thomas' bankruptcy documents, as they are public court records and subject to judicial notice. _See Ennenga v. Starns_, 677 F.3d 766, 773-74 (7th Cir. 2012).

Commission ("EEOC") the following month, alleging that Indiana Oxygen wrongfully terminated him based on his disability and in retaliation. [Filing No. 10-11.] The EEOC issued Mr. Thomas a "Right to Sue" letter, [Filing No. 10-12], and Mr. Thomas filed a Complaint in Marion County Superior Court on February 19, 2014, [Filing No. 1-1]. Indiana Oxygen removed the lawsuit to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. [Filing No. 1.]

In his Complaint, Mr. Thomas asserts claims for discrimination in violation of the American with Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA"), retaliation in violation of the ADA, and retaliatory discharge in violation of public policy. [Filing No. 1-1 at 4-5.] Mr. Thomas alleges that he was terminated from his employment within weeks after he suffered a significant work-related injury. [Filing No. 1-1 at 3.] He claims that, despite his qualifications and work performance, Indiana Oxygen "failed and refused to engage in the interactive process with [him], failed to make or even consider reasonable accommodations for him, and ultimately terminated his employment because of his disability or perceived disability." [Filing No. 1-1 at 4.] Additionally, Mr. Thomas asserted that his termination was in retaliation for exercising his rights to seek accommodation and worker's compensation. [Filing No. 1-1 at 4-5.]

Meanwhile, after his termination but before he filed the Complaint, Mr. Thomas filed two motions in the Bankruptcy Court. First, Mr. Thomas filed a Motion to Modify Chapter 13 Plan on May 29, 2013, requesting that the court modify his plan due to a decrease in income, [Filing No. 10-7 at 1], and the court granted his motion on July 17, 2013, [Filing No. 10-8]. Then, on August 18, 2013, he moved the Bankruptcy Court to modify his Chapter 13 plan to reflect receipt of a worker's compensation settlement, [Filing No. 10-9 at 1]. The Bankruptcy Court granted his motion on October 7, 2013. [Filing No. 10-10.] Neither motion contained information regarding

Mr. Thomas' potential litigation or any claims he might have against Indiana Oxygen, and the Bankruptcy Court modified his Chapter 13 plan based on those representations in the motions.

Indiana Oxygen filed the pending motion on April 2, 2014. [Filing No. 10.] Shortly thereafter, Mr. Thomas filed a Debtors' Application to Employ Special Counsel, advising the Bankruptcy Court of his employment discrimination case in this Court and asking it to appoint special counsel for the proceeding. [Filing No. 13-1 at 1.] The Bankruptcy Court granted Mr. Thomas' motion on May 7, 2014. [Filing No. 13-2.]

### III.
### DISCUSSION

#### A.    Standing

The Court must determine whether Mr. Thomas has standing to bring his employment discrimination suit in this Court. Without standing, there would be no basis for subject-matter jurisdiction, his claims cannot proceed, and must be dismissed. Fed. R. Civ. P. 12(b)(1).

Indiana Oxygen argues that Mr. Thomas does not have standing to pursue his claims because the claims are property of the bankruptcy estate and he has not disclosed them in the bankruptcy proceeding. [Filing No. 10 at 4-5.] Further, Indiana Oxygen argues that if Mr. Thomas were to attempt to amend his bankruptcy petition, he would still be estopped from pursuing his claims for his own benefit. [Filing No. 10 at 8.] Mr. Thomas responds that he "has always had standing to pursue this case" and has now disclosed his claims in the bankruptcy proceeding. [Filing No. 13 at 2-3.]

As an initial matter, it is clear that Mr. Thomas' discrimination claims are part of the bankruptcy estate. The Bankruptcy Code requires the debtor to schedule as assets "all legal or equitable interests of the debtor in property as of the commencement of the [Chapter 13 bankruptcy] case." 11 U.S.C. § 541(a)(1). Any legal claims procured while the bankruptcy is

pending also become property of the bankruptcy estate.  11 U.S.C. § 1306(a)(1) ("Property of the [Chapter 13 bankruptcy] estate includes . . . all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . ."); *Rainey v. United Parcel Service, Inc.*, 466 Fed. Appx. 542, 544 (7th Cir. 2012) ("A Chapter 13 estate encompasses all property, including legal claims, acquired after the petition is filed and before the case is closed").  Because Mr. Thomas' discrimination claims against Indiana Oxygen arose after his bankruptcy proceedings commenced and before it concluded,[2] they are property of the bankruptcy estate.

As part of the bankruptcy estate, Mr. Thomas has a duty to disclose his employment discrimination claims to the Bankruptcy Court.  "Debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case is open." *Rainey*, 466 Fed. Appx. at 544. During the first month and a half of this litigation, Mr. Thomas neglected his duty.  [*See* Filing No. 10-3.]  On April 18, 2014, however, after Indiana Oxygen filed the pending Motion to Dismiss, Mr. Thomas disclosed his employment discrimination suit to the Bankruptcy Court and requested to employ special counsel, [Filing No. 13-1 at 1], and the Bankruptcy Court granted Mr. Thomas' motion, [Filing No. 13-2].  As such, he fulfilled his duty to inform the Bankruptcy Court and his creditors of his employment discrimination claims.

---

[2] Mr. Thomas filed his Petition on July 13, 2012, [Filing No. 10-1], and a charge of discrimination with the EEOC on June 24, 2013 based on unlawful disability discrimination and retaliation beginning in May 2013, [Filing No. 10-11].  His bankruptcy case had not been dismissed, closed, or converted as of the date Indiana Oxygen filed its Motion to Dismiss and, indeed, the bankruptcy case remains pending today.  [*See* Filing No. 10-3; *In re Thomas*, 12-08357-FJO-13 (Bankr. S.D. Ind.).]

Because a Chapter 13 debtor retains possession of the bankruptcy estate's property and "has concurrent standing with the bankruptcy trustee to pursue claims on behalf of the estate,"[3] *Tucker v. Closure Systems Intern.*, 2011 WL 4479112, *2 (S.D. Ind. 2011) (quoting *Calvin v. Potter*, 2009 WL 2588884, *2 (N.D. Ind. 2009)), Mr. Thomas is permitted to proceed in this lawsuit on behalf of the bankruptcy estate. *See Rainey*, 466 Fed. Appx. at 544 ("Although there is a trustee in a Chapter 13 bankruptcy, the trustee acts as an advisor and administrator while the debtor remains in possession of the estate. The debtor thus can pursue legal claims for the benefit of the estate and its creditors") (citations omitted); Fed. R. Bankr. P. 6009 ("[T]he trustee or debtor in possession may prosecute . . . any pending action or proceeding by . . . the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal"). As long as the bankruptcy proceeding is pending, Mr. Thomas, as "a Chapter 13 debtor[,] can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, [Mr. Thomas] may litigate the claims on behalf of the estate and for the benefit of the creditors without court approval." *Rainey*, 466 Fed. Appx. at 544.[4]

---

[3] A Chapter 7 debtor, on the other hand, does not have the authority to pursue litigation on behalf of the bankruptcy estate. In a Chapter 7 bankruptcy, only the trustee may do so. *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) ("Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor's property, to which end Congress granted the trustee broad powers without interference from the debtor. The trustee has sole authority to dispose of property, including managing litigation related to the estate") (citations omitted).

[4] The Court rejects Mr. Thomas' argument that he "always" had standing to pursue his claims. He acquired standing to pursue the claims on behalf of the bankruptcy estate when he disclosed the claims in the bankruptcy proceeding. Had he remained silent regarding the claims, he would not have had standing to pursue those claims on his own behalf because they belonged to the bankruptcy estate. *Rainey*, 466 Fed. Appx. at 544 (discrimination claim which arose after Chapter 13 payment plan confirmed and before case was closed was property of the estate). Absent disclosure, he also would not have had standing to pursue them on behalf of the bankruptcy estate. *See Tucker*, 2011 WL 4479112 at *2 (where debtor failed to disclose discrimination claims which existed at time she filed for bankruptcy, court held she was not

Because Mr. Thomas is permitted to pursue his employment discrimination claims on behalf of the bankruptcy estate as a debtor-in possession, Mr. Thomas has met his burden to prove that this Court has subject-matter jurisdiction over his claims.  *See id.* (finding that the Chapter 13 debtor had standing to litigate his discrimination claims in federal district court after informing the trustee of previously undisclosed claims when the trustee did not choose to abandon that property and when the bankruptcy proceedings were ongoing); *Tucker*, 2011 WL 4479112, at *2 (concluding that once the Chapter 13 debtor amended her schedules to include the cause of action and the bankruptcy court appointed special counsel to litigate her claim on behalf of the bankruptcy estate, the debtor was "no longer pursuing this action for her benefit, and thus, she has standing to bring this claim").

### B.  Judicial Estoppel to Cap Damages

Indiana Oxygen argues that even if Mr. Thomas has standing to pursue his employment discrimination claims on behalf of the bankruptcy estate, judicial estoppel prescribes that Mr. Thomas' damages be capped at the amounts allowed by the Bankruptcy Court for creditors' claims, interest thereon, and fees for the trustee incurred in the Bankruptcy Court.  [Filing No. 10 at 10.]   It contends that Mr. Thomas "cannot now be allowed to benefit based on his fraudulent omissions to the Bankruptcy Court."   [Filing No. 10 at 10.]   Mr. Thomas replies that judicial estoppel does not apply in this case because his nondisclosure was inadvertent, and he took swift corrective action to disclose this lawsuit to the Bankruptcy Court.  [Filing No. 13 at 3-5.]

Judicial estoppel is an equitable doctrine, *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006), and may be invoked by a court at its discretion, *New Hampshire v. Maine*, 532

---

bringing discrimination claims on behalf of the estate and lacked standing to pursue her discrimination lawsuit at the time it was filed).

U.S. 742, 750 (2001). The doctrine can be used either to estop the plaintiff from pursuing a claim entirely, *Matthews v. Potter*, 316 Fed. Appx. 518, 522-23 (7th Cir. 2009), or to cap the damages available to the plaintiff, *Wiggins v. Citizens Gas & Coke Utility*, 2008 WL 4530679, *4 (S.D. Ind. 2008).[5] Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). The purpose of this doctrine is "to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). The doctrine of judicial estoppel is often applied to a debtor's cause of action when the debtor "conceals a legal claim and denies owning the asset in bankruptcy," *Matthews*, 316 Fed. Appx. at 522, but may be inappropriate when the party's nondisclosure was based on inadvertence or mistake, *New Hampshire*, 532 U.S. at 753; *Williams v. Hainje*, 375 Fed. Appx. 625, 628 (7th Cir. 2010).

Indiana Oxygen relies heavily on *Wiggins v. Citizens Gas & Coke Utility*, 2008 WL 4530679 (S.D. Ind. 2008), to support its argument that Mr. Thomas' nondisclosure was not based on inadvertence and that his damages should be capped as a result. In *Wiggins*, the plaintiff filed a charge with the EEOC on July 1, 2002, alleging that his employer discriminated against him. 2008 WL 4530679, at *1. Two months later, the plaintiff filed a petition for Chapter 7 bankruptcy without disclosing his EEOC charge. *Id.* After the trustee reported no receipt or

[5] Indiana Oxygen argues that Mr. Thomas is estopped from pursuing his claims on his own behalf. [Filing No. 10 at 8-9; Filing No. 17 at 2-4.] The Court has found that Mr. Thomas' claims are the property of the bankruptcy estate and he can only pursue them on behalf of the estate. Thus, it need not consider Indiana Oxygen's estoppel argument as it relates to Mr. Thomas pursuing his claims on his own behalf, and not on behalf of the bankruptcy estate. Indeed, Mr. Thomas appears to concede that he can only pursue his claims on behalf of the bankruptcy estate. [*See* Filing No. 13 at 4 ("where, as here, the Plaintiff/debtor is pursuing the claim on behalf of the bankruptcy estate and the creditors and not on his own behalf….").]

distribution of assets, the bankruptcy court granted him a discharge of his debts and closed the case. *Id.* Over two and a half years later, the plaintiff filed a lawsuit against his employer based on the alleged discrimination. *Id.* In response to his employer's interrogatory, the plaintiff denied filing for personal bankruptcy after June 2002, which was untrue. *Id.* With only seven days until the trial date, the employer notified the court that it had discovered that the plaintiff had failed to disclose his Chapter 7 bankruptcy to it during discovery, and that the plaintiff had failed to disclose his EEOC charge to the bankruptcy court in his Chapter 7 bankruptcy petition years earlier. *Id.* The employer subsequently filed a motion to dismiss. *Id.* The plaintiff convinced the bankruptcy court to reopen his case, he declared his employment discrimination claim to the bankruptcy court, and the district court substituted the trustee as the real party in interest for the plaintiff's claim. *Id.* It concluded that judicial estoppel applied and that the plaintiff's damages should be capped because "corrective action taken only after being 'caught' and compelled to do so by one's opponent is too late; it is not a defense to the application of judicial estoppel." *Id.* at *3. The court found that there was "no doubt that [the plaintiff] was aware of his claims against [the employer] when he filed his petition for bankruptcy protection," and he was "bound by the actions of his counsel and by his own signatures on his bankruptcy filings." *Id.*

Although the Seventh Circuit has not spoken directly on the issue before the Court, other district courts within this Circuit have analyzed cases involving facts much closer to the facts present in this case – which are significantly distinguishable from the facts in *Wiggins*.[6] Indeed,

---

[6] In fact, both the facts in this case and Indiana Oxygen's request for relief are distinguishable from all cases in the Seventh Circuit and many cases in the Circuit's district courts that have discussed judicial estoppel in relation to nondisclosure of a lawsuit to the bankruptcy courts. In those cases, the debtor was bringing a claim in district court on behalf of him or herself, not the bankruptcy estate. *See, e.g., Kimble v. Donahoe*, 511 Fed. Appx. 573 (7th Cir. 2013); *Burruss v.*

the totality of the facts in this case are more comparable to those in *Fulmore v. M & M Transport Services, Inc.*, 2013 WL 3864205 (S.D. Ind. 2013). In *Fulmore*, the plaintiff filed a Chapter 13 bankruptcy petition two years before he filed a lawsuit in district court. 2013 WL 3864205, at *1. The bankruptcy case was still pending. *Id.* Although the plaintiff informed his bankruptcy attorney about the lawsuit and disclosed his bankruptcy plan in response to the defendant's discovery requests, the plaintiff did not disclose the lawsuit to the bankruptcy court. *Id.* at *2. The defendant filed a motion to cap the plaintiff's damages and argued that the plaintiff intentionally concealed the lawsuit from the bankruptcy court, only revealing the lawsuit after being "caught" by the defendant, and that judicial estoppel should apply. *Id.* at *1-2. The court distinguished the facts from those in *Wiggins*: "[T]here is not strong evidence that [the plaintiff] intentionally concealed this lawsuit for gain, exercised deliberate or intentional manipulation or that he received a substantial benefit from the failure to disclose." *Id.* at *3. It concluded: "Although the facts suggest [the plaintiff] may have waited until he was 'caught,' the Court finds that his swift corrective action cures the previous concealment." *Id.*

Similar to the plaintiffs in both *Wiggins* and *Fulmore*, Mr. Thomas did not disclose this lawsuit to the Bankruptcy Court until after Indiana Oxygen filed its Motion. *See Wiggins*, 2008

_____

*Cook County Sheriff's Office*, 2013 WL 3754006 (N.D. Ind. 2013); *Lujano v. Town of Cicero*, 2012 WL 4499326 (N.D. Ill. 2012); *Williams*, 375 Fed. Appx. 625; *Matthews*, 316 Fed. Appx. 518; *Becker v. Verizon North, Inc.*, 2007 WL 1224039 (7th Cir. 2007); *Biesek v. Soo Line R. Co.*, 440 F.3d 410 (7th Cir. 2006); *Cannon-Stokes*, 453 F.3d 446. Furthermore, many of those cases involved a defendant's request for judicial estoppel to bar a plaintiff's claims entirely, not to cap damages as Indiana Oxygen requests here. *See, e.g., Dobrzeniecki v. Salisbury*, 2013 WL 500847 (N.D. Ill. 2013); *Kimble*, 511 Fed. Appx. 573; *Lujano*, 2012 WL 4499326; *Tucker*, 2011 WL 4479112; *Hernandez v. Forest Preserve Dist. Of Cook County, Ill.*, 2010 WL 1292499 (N.D. Ill. 2010); *Williams*, 375 Fed. Appx. 625; *Matthews*, 316 Fed. Appx. 518; *Bland v. Rahar*, 2008 WL 109388 (C.D. Ill. 2008); *Becker*, 2007 WL 1224039; *Cannon-Stokes*, 453 F.3d 446; *Swearingen-El v. Cook County Sheriff's Dept.*, 456 F.Supp.2d 986 (N.D. Ill. 2006). Of course, the general discussion about judicial estoppel in the above cases is useful for understanding the doctrine in this case.

WL 4530679, at *1; *Fulmore*, 2013 WL 3864205, at *1-2; [Filing No. 10; Filing No. 13-1]. In the instant case, however, Mr. Thomas' employment discrimination claims, like the plaintiff's claims in *Fulmore*, arose while his Chapter 13 bankruptcy case was still pending. [Filing No. 1-1]; *Fulmore*, 2013 WL 3864205, at *1. In *Wiggins*, the bankruptcy court closed the plaintiff's Chapter 7 bankruptcy case and fully discharged his debts after relying on his nondisclosure, 2008 WL 4530679, at *1, but here Mr. Thomas has not received a discharge of his debts or other substantial gains as a result of his omission, [*see* Filing No. 10-3]. Additionally, unlike the plaintiff in *Wiggins* but comparable to the plaintiff in *Fulmore*, there is no evidence that Mr. Thomas intentionally withheld information about this lawsuit from the Bankruptcy Court. *Wiggins*, 2008 WL 4530679, at *1; *Fulmore*, 2013 WL 3864205, at *2-3. The plaintiff in *Wiggins* actively and deliberately denied filing a personal bankruptcy after June 2002 in response to the defendant's interrogatory, 2008 WL 4530679, at *1, whereas there is no evidence that Mr. Thomas intentionally manipulated the Bankruptcy Court or this Court by explicitly lying on his Petition or any other court document.

In the context of whether judicial estoppel applies, the courts are divided on the question whether a plaintiff's subjective intent or corrective action for the benefit of the bankruptcy estate matters. Some courts look primarily to the subjective intent of the party to consider whether the plaintiff's nondisclosure was inadvertent or purposeful. *See Korti v. A.W. Holdings, LLC*, 2014 WL 793360, *4 (N.D. Ind. 2014) ("Defendant has cited to nothing in the record to indicate that [the plaintiff] intentionally omitted the litigation from his first filing, or at the beginning of the second petition, or that he possessed a bad motive"); *Burns v. Village of Crestwood*, 2013 WL 352784, *4 (N.D. Ind. 2013) ("Court generally consider a party's subjective intent in deciding whether to apply judicial estoppel . . . Without evidence of why [the plaintiff] omitted his

potential claims from his initial bankruptcy petition, the Court cannot decide whether applying the equitable doctrine of judicial estoppel would 'work an injustice'") (quoting *Matter of Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990)); *Jaeger v. Clear Wing Prods., Inc.*, 465 F.Supp.2d 879, 882 (S.D. Ill. 2006) ("Notably, judicial estoppel does not apply when a debtor's 'prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court'") (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1048 (8th Cir. 2006)); *Swearingen-El*, 456 F.Supp.2d at 991 ("Judicial estoppel is not warranted here. Defendants cannot show plaintiff intended to deceive the bankruptcy court")).

A plaintiff's swift corrective action, namely disclosure of a lawsuit to the bankruptcy court for the benefit of the bankruptcy estate, can suggest that the nondisclosure was inadvertent. In *Cannon-Stokes*, the Seventh Circuit applied judicial estoppel to prevent the plaintiff from personally benefitting from a lawsuit that she failed to disclose to the bankruptcy court, reasoning that "if [the plaintiff] were really making an honest attempt to pay her debts, then as soon as she realized that it *had* been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery." 453 F.3d at 448 (emphasis in original). The court continued, "a debtor in bankruptcy is bound by her own representations, no matter why they were made, *at least until the debtor moves to amend the disclosures and pay the creditors their due* (a step that, to repeat, [the plaintiff] has not taken)." *Id.* at 449 (emphasis added). The *Cannon-Stokes* Court appeared deeply troubled not by the fact that the plaintiff failed to disclose the lawsuit, but by the fact that the plaintiff failed to take corrective action. *Id.* at 448-49; *see also Lujano*, 2012 WL 4499326, at *13-14 (declining to apply judicial estoppel when the plaintiff filed a proposed plan to the bankruptcy court shortly after the defendants filed a motion for summary judgment); *Tucker*, 2011 WL 4479112, at *3

(concluding that "the better reasoned approach is to allow the Plaintiff to pursue this claim" after she "rectif[ied] her prior omission by amending her bankruptcy schedules").

Other courts have determined that a plaintiff's nondisclosure is "inadvertent only when he is either unaware of the claims or has no motive to conceal the claims." *Wiggins*, 2008 WL 4530679, at *2. Using this reasoning, a plaintiff's corrective action and subjective intent beyond this narrow understanding of "inadvertence" do not matter. *See Becker*, 2007 WL 1224039, at *1 ("[The plaintiff] intimates that her failure to disclose this lawsuit in her sworn financial statement was unintentional, but her subjective intent does not matter") (citing *Cannon-Stokes*, 453 F.3d at 449); *Bland*, 2008 WL 109388, at *3 ("Whether or not [the plaintiff] knowingly concealed this cause of action, the Court finds no grounds to excuse his failure to disclose"). Indiana Oxygen urges the Court to adopt this reasoning as well, but several district court cases since *Wiggins* have applied a broader definition of "inadvertence" that considers subjective intent, and the Court will do the same here. *See, e.g.*, *Korti*, 2014 WL 793360, at *6; *Burns*, 2013 WL 352784, at *4; *Fulmore*, 2013 WL 3864205, at *3; *Posley v. Clarian Health*, 2012 WL 4101914, *5-6 (S.D. Ind. 2012); *Tucker*, 2011 WL 4479112, at *3.

Given the early stage of this litigation, the lack of evidence suggesting that Mr. Thomas' nondisclosure of this lawsuit to the Bankruptcy Court was purposeful,[7] his prompt disclosure following Indiana Oxygen's motion, and the lack of substantial gain to Mr. Thomas from his

---

[7] Although there is no cited evidence that his nondisclosure was inadvertent either, in a Rule 12(b)(1) motion all reasonable inferences are made in favor of Mr. Thomas. *See Posley*, 2012 WL 4101914, at *6 ("At this early stage in the proceedings . . . the Court cannot make a negative determination regarding the intent and motivation of [the plaintiff] when she omitted the lawsuit from her bankruptcy schedules. Even if the Court inferred manipulative or deceptive motivation from the record, for purposes of the Motion to Dismiss, the Court makes all reasonable inferences in favor of [the plaintiff]"); *see also Aikens v. Soul Circus, Inc.*, 2011 WL 2550828, *5 (N.D. Ill. 2011) ("[Judicial estoppel] is an argument more appropriate for summary judgment . . . .").

nondisclosure, the Court will not apply judicial estoppel to cap Mr. Thomas' damages. This decision is made with an understanding of the vital importance of full disclosure of legal claims to bankruptcy courts. Allowing Mr. Thomas to continue this litigation on behalf of the bankruptcy estate without a damages cap will not encourage debtors to be dishonest in district courts. When a plaintiff is "caught" for failing to disclose a lawsuit to the bankruptcy court, there is no guarantee that the bankruptcy court will allow the late disclosure or that the district court will determine that the nondisclosure was inadvertent and allow the lawsuit to proceed. *See Lujano*, 2012 WL 4499326, at *13 ("[D]ishonest debtors are in no way guaranteed an opportunity to save a lawsuit from dismissal simply by disclosing concealed assets after they are discovered. Debtors run a grave risk that they will be unable to pursue litigation claims that are not disclosed during bankruptcy").

Moreover, the determination whether to cap damages and whether Mr. Thomas can benefit by receiving any damages over the amount owed to his creditors is likely one better suited for the Bankruptcy Court. In *Fulmore*, the court denied the defendant's motion to cap the plaintiff's damages and explained: "The Bankruptcy Court and Trustee are now on notice of this lawsuit. If and when any monies are received, the Court trusts that the Bankruptcy Court will proceed accordingly." 2013 WL 3864205, at *3. Similarly, in *Osterhout v. Wal-Mart Stores East, LP*, which presented facts similar to this case,[8] the court said:

---

[8] In *Osterhout*, the plaintiff filed a civil lawsuit in district court while her Chapter 13 bankruptcy case was pending. 2012 WL 1434842, at *1. The plaintiff failed to disclose her civil lawsuit to the bankruptcy court, but after receiving the defendant's motion to dismiss for lack of subject-matter jurisdiction, the plaintiff filed a Notice of Amendment of her Chapter 13 bankruptcy, amended the statement of her financial affairs, and amended the declaration for her schedule. *Id.* The bankruptcy court appointed counsel for the plaintiff to litigate her pending claim in district court. *Id.* For the first time in their reply brief, the defendants argued that the court should limit her damages to the amount owed to her creditors in the bankruptcy proceeding and declare that the plaintiff may only pursue her claim on behalf of the bankruptcy estate. *Id.* at *2. The district

> [T]he Court must defer their resolution to the expertise of the Bankruptcy Court. If, as the Defendants suggest, the Plaintiff intended to defraud her creditors and the Bankruptcy Court makes such a finding, it may determine the appropriate remedy for that conduct. Similarly, whether [the plaintiff] may only pursue her case for the benefit of the bankruptcy estate is within the jurisdiction of the bankruptcy court.

2012 WL 1434842, *2 (N.D. Ind. 2012); *see also* Korti, 2014 WL 793360, at *6 ("Whether [the plaintiff's] damages should be limited to the amount owed to his creditors in his bankruptcy case is an issue within the jurisdiction of the bankruptcy court"). At this time, based on the reasons listed above, Mr. Thomas is allowed to proceed with his employment discrimination claims acting on behalf of the bankruptcy estate, and the decision whether he is allowed to receive damages in excess of the amount owed to his creditors is left to the Bankruptcy Court.[9]

## IV.
### CONCLUSION

For the foregoing reasons, Indiana Oxygen's Motion to Dismiss Plaintiff's Complaint and/or Cap Plaintiff's Damages Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, [Filing No. 9], is **DENIED**.

**Distribution via ECF only to all counsel of record**

---

court held that these arguments were generally waived as they were raised for the first time in a reply brief. *Id.*

[9] Mr. Thomas noted in his Response to Defendant's Motion that his counsel was "informed by Mr. Thomas' bankruptcy attorney that the applicable schedules are in the process of being amended to reflect this case as an asset." [Filing No. 13 at 5 n.2.] It appears that this amendment has now taken place. [*See* Filing No. 76 in *In re Thomas*, 12-08357-FJO-13 (Bankr. S.D. Ind.).]